UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRUSTEES OF THE OPERATING ENGINEERS'
LOCAL 324 PENSION FUND, OPERATING
ENGINEERS' LOCAL 324 HEALTH CARE PLAN,
OPERATING ENGINEERS' LOCAL 324 VACATION
& HOLIDAY FUND, OPERATING ENGINEERS'
LOCAL 324 APPRENTICESHIP FUND, and
OPERATING ENGINEERS' LOCAL 324 DEFINED
CONTRIBUTION PLAN,
Trust Funds Established and Administered          CASE NO. 10-10841
Pursuant to Federal Law,                          HON. AVERN COHN

     Plaintiffs,

v.

FERGUSON'S ENTERPRISES, INC.,
a Michigan corporation, and
BOBBY W. FERGUSON, individually,

     Defendants.
_____/

## MEMORANDUM AND ORDER GRANTING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. 29)

### I. Introduction

This is an ERISA[1] case. The Trustees of the Operating Engineers' Local 324 Pension Fund, Operating Engineers' Local 324 Vacation & Holiday Fund, Operating Engineers' Local 324 Retiree Benefit Fund, Operating Engineers' Local Apprenticeship Fund and Operating Engineers' Local 324 Defined Contribution Plan (collectively Trustees) claim a violation of ERISA after an audit determined Ferguson's Enterprises, Inc. was delinquent in its payment of fringe benefit contributions.

---

[1] Employees Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq.

Bobby W. Ferguson owns and operates Ferguson's Enterprises, Inc. (FE), a Michigan corporation, which specialized in instillation and maintenance of underground utilities. The relationship between FE and its employees is governed by a collective bargaining agreement (CBA). The CBA requires FE to pay fringe benefit contributions to funds managed by Trustees. Trustees say FE failed to make the required payments. Trustees further contend Ferguson had a fiduciary duty to make the payments of the fringe benefit contributions and is personally liable for the amount due.

Now before the Court is Trustees' motion for summary judgment. For the reasons that follow, the motion is **GRANTED.**

## II. Background

FE is a company wholly owned by Ferguson, who calls himself the operating manager. An audit performed December 1, 2010 determined FE owed $115,026.53 to Trustees. In addition, Trustees assert it is entitled to liquidated damages for the costs of the audit in the amount of $11,448.81 and liquidated damages for late payments in the amount of $35,949.17.

FE admits that it owes $21,758 to Trustees and says part of the audit was based on inaccurate information. According to FE, two of the employees identified in the audit, Samuel and Newsome, were listed as operating engineers but in fact were laborers and consequently not entitled to fringe benefits.[2] Trustees say FE owes $5,382.53 and $3,218.53 for fringe benefit contributions on behalf of Samuel and Newsome not paid to Trustees. The audit determined that both men were paid as

---

[2] The Laborers' fringe benefits are paid into a different fund. An audit of the Laborers funds determined that no payments were made on behalf of Samuel or Newsome.

operating engineers; with the exception of March 2007 when Newsome appeared on the payroll as an operating engineer, the next pay period as a laborer, and the following period he was changed back to an operating engineer. FE does not explain this anomaly.

Next, FE disputes the amount due on the fringe benefit contributions on behalf of employee Lapham, which Trustees says amounts to $84,660.29.[3] During his employment, FE paid Lapham as a laborer. However, beginning in January of 2007 Lapham was performing the work of an operating engineer. Lapham filed a prevailing wage claim with the City of Detroit. The City of Detroit agreed Lapham was an operating engineer and determined FE owed $71,000 in back pay. This figure represented the difference between wages he actually received and the wages he should have received from January 2007 to March 2009. The auditor identified this time period as months FE failed to make fringe benefit contributions to Trustees on Lapham's behalf.

FE offered to settle the prevailing wage claim with Lapham for $68,000. Lapham accepted the offer; FE issued a check, and Lapham signed a form titled "ACKNOWLEDGEMENT AND RELEASE OF ALL CLAIMS." The document acknowledged receipt of payment "of an agreed upon settlement amount, constituting payment in full of all wages due…[b]y receipt of said check, the undersigned acknowledges he has received payment in full for all prevailing wages for work performed as an employee of Ferguson Enterprises." Finally, the document also "releases Ferguson Enterprises…[from] any and all other claims [Lapham] may have."

---

[3] Neither party disputes the accuracy of the audit; FE disputes its factual predicates.

3

FE says this settlement waives the right to recover any other claim, including unpaid contributions for fringe benefits, which existed before the settlement.

Trustees dispute the validity of the document on the basis that a FE employee witnessed it and an individual who FE refused to produce for a deposition notarized it. Trustees, however, did not produce an affidavit from Lapham disputing the authenticity of the document.

Finally, Trustees assert Ferguson controlled all the company assets and made decisions on which bills to pay. According to Trustees, Ferguson had a fiduciary duty to remit to Trustees fringe benefit contributions withheld from his employee's paychecks, he failed to do so, and thus he is personally liable for the contributions.

### III. Legal Standard

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must

present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see Anderson, 477 U.S. at 249–50.

## IV. Trustees' Motion for Summary Judgment

Trustees now move for summary judgment on the basis that there are no material facts in dispute because FE has failed to offer any evidence to rebut its contentions. In addition, Trustees says the question of whether Ferguson is personally liable is a question of law and appropriate for summary judgment.

## V. Discussion

The parties disagree over three issues: (1) whether Samuels and Newsome were operating engineers or laborers, (2) whether FE's settlement with Lapham waived Trustees' right to fringe benefit contributions on Lapham's behalf and (3) whether Ferguson is personally liable for the deficiency in contributions.

### A. Samuels & Newsome

FE disputes owing contributions for Samuels and Newsome on the basis that they worked as laborers, not operating engineers. FE says previous payments to the Trustees' funds on their behalf were a mistake. In support of this contention FE offers Newsome's union card which indicates membership in the Laborers union. However, this card is from 2004, well outside of the timeframe at issue. FE offers nothing further is support of its defense.

Trustees on the other hand, provides exhibits showing that FE paid Newsome and Samuels as operating engineers and paid fringe benefits contributions on their behalf to the Operating Engineers' Funds. The only exception is in March 2007 when

FE changed Newsome's status from operating engineer to laborer and then back to operating engineer the following pay period. It appears that FE was well aware of Newsome's title and pay grade. FE has not demonstrated a genuine issue of material fact. Unpaid fringe benefit contributions for Samuels and Newsome are due to Trustees consistent with the results of the audit.

### B. Lapham's Settlement

**1.**

Next, FE contends Lapham's settlement of his prevailing wage claim forecloses Trustees right to collect unpaid fringe benefit contributions. However, Lapham's settlement cannot alter FE's obligations under the CBA. Settlement with a third party does not alter existing contractual rights under a CBA. Brogan v. Swanson Painting Co., 682 F.2d 807, 809-10 (9th Cir. 1982).[4]

The Ninth Circuit's opinion in Brogan is instructive. Swanson Painting Company hired non-union workers in violation of its CBA. Under the terms of the CBA Swanson was obligated to make fringe benefits contributions based on the hours worked by the non-union contractors. Swanson argued that its settlement with the non-union contractors relieved it of its obligation to pay fringe benefit contributions. The Ninth Circuit disagreed; the panel explained that Swanson had a contractual obligation under the CBA that was not altered by its settlement to the third party.

The same rational applies to the present facts. FE had a contractual obligation to pay fringe benefit contributions on behalf of Lapham. FE's settlement with Lapham on

---

[4] FE cites this case in support of its motion, arguing that the waiver signed in this case distinguishes Brogan. Brogan held a third party settlement did not relieve the employer's obligations under the CBA with respect to ERISA contributions. Therefore, a waiver by the third party did not affect the employer's obligations to the Funds.

his prevailing wage claim did not alter the Trustees' rights under the CBA. Settlement of Lapham's prevailing wage claim did not affect FE's obligations to remit fringe benefit contributions. Waiver or no waiver, Lapham did not alter the terms of the CBA.

### C. Personal Liability

As soon as fringe benefit contributions were withheld, according to Trustees, FE had an obligation to remit them and the failure to do so was a breach of fiduciary duty. A person is a fiduciary with respect to a plan when he exercises discretion or authority over the plan assets. 29 U.S.C. §1002(21)(A). This definition includes an employer who exercises discretion and control over the company's finances and is responsible for paying fringe benefit contributions to trust funds. Acosta, 950 F.2d at 620. As the Trustees point out, this proposition is well accepted, including by this Court. See Tr. of the Michigan Reg'l Council of Carpenters Emp. Benefits Fund et al. v. Accura Concrete Walls, Inc., 408 F.Supp.2d 370 (E.D. MI 2005).

Ferguson exercised control and discretion over FE's finances. Therefore, if Ferguson failed in his fiduciary duty to remit fringe benefit contributions to the Trustees, then he is personally liable for the deficiency. 29 U.S.C. §1109(a). The audit determined that FE failed to make the required contributions. Thus, he is personally liable.

In response, Ferguson argues that the Trustees have made no showing of "purposeful diversion of funds." When Ferguson withheld fringe benefit contributions from FE employees' wages and failed to pay them to the appropriate funds the amount of the contribution was diverted from its proper course. To the extent that FE owes

7

Trustees delinquent fringe benefit contributions, Ferguson, as the owner and managing corporate officer of FE, is also personally liable.

### VI. Audit

The parties do not dispute the accuracy of the audit; the findings follow:

| | |
|---|---|
| Health Care: | $44,638.51 |
| Pension: | $38,390.09 |
| Retiree Benefit: | $2,578.03 |
| Vacation: | $21,603.98 |
| Supplemental Vacation: | $232.51 |
| Apprenticeship: | $1,052.02 |
| Industrial Advisory: | $538.40 |
| Labor Management: | $408.99 |
| Defined Contribution | $5,584.00 |
| Liquidated Damages From Audit | $11,448.81 |
| Liquidated Damages From Late Payments | $35,949.17 |
| | ---------------- |
| Total: | $162,424.51 |

Accordingly, the defendants are liable to plaintiffs for $162,424.51. The Clerk will enter a judgment in that amount to be apportioned between the plaintiffs as they agree.

**SO ORDERED.**

**Dated:  January 3, 2012**          **s/Avern Cohn**
                                      **AVERN COHN**
                                      **UNITED STATES DISTRICT JUDGE**

8

      I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, Tuesday, January 3, 2012, by electronic and/or ordinary mail.

                                            s/Julie Owens  
                                            Case Manager, (313) 234-5160