UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRUSTEES OF THE OPERATING ENGINEERS'
LOCAL 324 PENSION FUND, OPERATING
ENGINEERS' LOCAL 324 HEALTH CARE PLAN,
OPERATING ENGINEERS' LOCAL 324 VACATION
& HOLIDAY FUND, OPERATING ENGINEERS'
LOCAL 324 APPRENTICESHIP FUND, and
OPERATING ENGINEERS' LOCAL 324 DEFINED
CONTRIBUTION PLAN,
Trust Funds Established and Administered          CASE NO. 10-10841
Pursuant to Federal Law,                          HON. AVERN COHN

     Plaintiffs,

v.

FERGUSON'S ENTERPRISES, INC.,
a Michigan corporation, and
BOBBY W. FERGUSON, individually,

     Defendants.
_____/

### AMENDED MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR MANDATES OF 29 U.S.C. §1132(g)(2) (DOC. 39)[i]

### I. Introduction

This is an ERISA[1] case. The Trustees of the Operating Engineers' Local 324 Pension Fund, Operating Engineers' Local 324 Vacation & Holiday Fund, Operating Engineers' Local 324 Retiree Benefit Fund, Operating Engineers' Local Apprenticeship Fund, and Operating Engineers' Local 324 Defined Contribution Plan (collectively Trustees) petition the Court to increase the judgment awarded against Ferguson, Inc. and Bobby W. Ferguson (FE) in accordance with 29 U.S.C. §1132(g)(2). Trustees sued

---

[1] Employees Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq.

FE for delinquent ERISA contributions. (Doc. 1). Trustees filed a motion for summary judgment (Doc. 29). After briefing and oral argument, the Court issued a memorandum and order granting Trustees' motion for summary judgment and entered a judgment in the amount of $162,424.51. (Docs. 37, 38).

Now before the Court is Trustees' motion for the mandates of 29 U.S.C. §1132(g)(2) (Doc. 39), which Trustees' says entitles it to double interest on the judgment and attorney's fees. For the reasons that follow, Trustees' motion is **GRANTED** in part and **DENIED** in part.

## II. Background

Bobby W. Ferguson owned and operated Ferguson's Enterprises, Inc. (FE), a Michigan corporation, which specialized in installation and maintenance of underground utilities. FE is wholly owned by Ferguson, who calls himself the operating manager. The relationship between FE and its employees was governed by a collective bargaining agreement (CBA). The CBA required FE to pay fringe benefit contributions to funds managed by Trustees. Trustees said FE failed to make the required payments. Trustees further contended Ferguson had a fiduciary duty to pay fringe benefit contributions and was personally liable for the delinquent contributions.

An audit performed December 1, 2010 determined FE owed $115,026.53 to Trustees in delinquent contributions. In addition to delinquent payments, Trustees

asserted it was entitled to liquidated damages for the costs of the audit in the amount of $11,448.81[2] and liquidated damages for late payments in the amount of $35,949.17.

FE admitted that it owed $21,758 to Trustees but said the remainder of the liability identified by the audit was based on inaccurate information. According to FE, the audit named two employees as operating engineers but in fact, they were laborers and consequently not entitled to fringe benefits.[3] Trustees said FE owed $5,382.53 and $3,218.53 for fringe benefit contributions on their behalf. The audit determined that FE paid both men as operating engineers; with the exception of March 2007 when one of the employees appeared on the payroll as an operating engineer, the next pay period as a laborer, and the following period he was changed back to an operating engineer. FE did not explain this anomaly.

Next, FE disputed the amount due on the fringe benefit contributions on behalf of employee Lapham, which Trustees said amounted to $84,660.29.[4] During his employment, FE paid Lapham as a laborer. Lapham filed a prevailing wage claim with the City of Detroit arguing he performed the work of an operating engineer. The City of Detroit agreed and determined FE owed him $71,000 in back pay from January 2007 to March 2009. The auditor identified January 2007 to March 2009 as months FE failed to make fringe benefit contributions to Trustees on Lapham's behalf. FE argues that

---

[2] Trustees now admits this assertion, not rebutted by FE, was in error. Liquidated damages for the cost of the audit are not provided for by the CBA.

[3] The Laborers' fringe benefits were paid into a different fund. An audit of the Laborers funds determined that no payments were made on behalf of Samuel or Newsome.

[4] Neither party disputed the accuracy of the audit; FE disputed its factual predicates.

Lapham's settlement forclosed Trustees right to contributions, the Court disagreed. (Doc. 37).

Finally, Trustees asserted Ferguson controlled all the company assets and made decisions on which bills to pay. The Court found Ferguson had a fiduciary duty to remit to Trustees fringe benefit contributions consistent with the terms of the CBA, he failed to do so, and thus he was personally liable for the contributions.[5] In response, FE argued and continues to argue, without citation to authority, that a finding of "purposeful diversion of funds" is a mandatory prerequisite to personal liability.

The Court entered a judgment that included the delinquent contributions identified by the Trustees' audit and the liquidated damages listed in Trustees prayer for relief. Again, FE did not dispute the accuracy of any of the figures referenced above.

After the Court entered a judgment in favor of Trustees in the amount of $162,424.51; it seems Trustees realized it asked the Court for less than it was potentially entitled. Trustees subsequently filed a motion requesting additional amounts (Doc. 39), as provided for by 29 U.S.C. §1132(g)(2). §1132(g)(2) instructs:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—
>
>     (i) interest on the unpaid contributions, or

---

[5] There is presently a motion for reconsideration pending, (Doc. 40) which argues that finding Ferguson personally liable was an error.

4

      (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

FE makes two arguments as to why Trustees is not entitled to additional monies. First, the liquidated damages awarded by the Court (Doc. 37, 38) are a penalty and therefore should not be enforced. Second, FE asserts it paid the delinquent contributions prior to the entry of judgment by the Court and therefore Trustees is not entitled to double interest allowed under §1132(g)(2).[6]

### III. Discussion

### A. Double Interest Under §1132(g)(2)

There are two distinct provisions of §1132(g)(2) relevant, each governed by a separate inquiry; the first is the double interest provision[7]; the second provision is an award of attorney's fees. First, whether or not Trustees may collect double interest depends on whether there are "unpaid contributions." In

---

[6] FE has represented to the Court that it has made this payment, Trustees has not disputed this assertion.

[7] As stated above, if §1132(g)(2) applies Trustees may collect the greater of double interest or interest plus liquidated damages under the plan no greater than 20% of the unpaid contributions. Because the greater of the two is double interest, the Court will restrict its analysis accordingly. Trustees asserts that the applicable interest rate is 12% under its trust documents although the CBA lists the interest rate for late payments as 18%. Because Trustees cannot collect interest under §1132(g)(2) it is unnecessary for the Court to determine which rate applies.

5

the Sixth Circuit, whether or not a contribution is "unpaid" and therefore subject to the mandates of §1132(g)(2), is determined at the time of judgment, not the time when the plaintiff filed suit. *Michigan Carpenters Council Health & Welfare et. al.*, 933 F.2d 376, 388 (6th Cir. 1991). If FE paid the outstanding contributions before the Court entered its judgment then there are no "unpaid contributions" that trigger double interest under §1132(g)(2). FE asserts that it paid the outstanding contributions (Trustees has not disputed this assertion). If FE paid the delinquent contributions prior to the entry of judgment by the Court it does not owe double interest as mandated by §1132(g)(2).

### B. Attorney's Fees Under 29 U.S.C. §1132(g)(2)

Next, §1132(g)(2)(D) mandates that the defendant pay reasonable attorney's fees in the event of a judgment for the plan. The statute reads "[i]n any action…by a fiduciary for or on behalf of a plan…in which a judgment in favor of the plan is awarded, the court shall award the plan…reasonable attorney's fees and costs of the action, to be paid by the defendant."

Preliminarily, FE cites the incorrect standard for an award of attorney's fees under §1132(g)(2).[8] An award of attorney's fees under §1132(g)(2) is mandatory. In contrast, an award of attorney's fees under §1132(g)(1) vests discretion in the Court to award attorney's fees if and when appropriate. Judges

---

[8] FE cites to one case to support its argument. *Michigan Laborers' Health Care Fund et. al. v. Taddie Construction*, 119 F.Supp.2d 698 (E.D. MI 2000). This case in turn cites to two cases, neither of which interpret §1132(g)(2).

6

often use the five factor test FE references in its brief.[9] However, it does not apply to this case.[10] §1132(g)(1) applies when the plaintiff is a "plan participant, beneficiary, or fiduciary." §1132(g)(2) applies where the plaintiff is "a fiduciary for or on behalf of a plan."

Even though Trustees cannot collect double interest on the delinquent contributions, attorney's fees mandated by §1132(g)(2) are not similarly tethered to the definition of unpaid contributions. *Parkhurst v. Armstrong Steel Erectors, Inc.*, 901 F.2d 796, 799 (9th Cir. 1990). In *Parkhurst*, the defendant made untimely payments but satisfied the outstanding contributions before plaintiffs filed suit. Even though there were no "unpaid contributions" to trigger the interest or liquidated damage provisions of §1132(g)(2), because there was a judgment, the defendant owed reasonable attorney's fees.[11] *Id.* The same reasoning applies here. Thus, FE is liable to the Trustees for attorney's fees in the amount of $22,679.50.

---

[9] (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions. *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1301 (6th Cir. 1991).

[10] FE has not challenged the accuracy, necessity, or amount of Trustees accounting of its attorney's hours.

[11] There were liquidated damages due under the terms of the CBA at the time of the suit.

7

## C. Liquidated Damages Under the Collective Bargaining Agreement[12]

With respect to the liquidated damage provisions keyed to "unpaid contributions" the remedy offered by §1132(g) is exclusive. *Michigan Carpenters, supra* at 389. However, when §1132(g) does not apply, parties may contract for liquidated damages, so long as those damages do not operate as a penalty. *Id.* at 390. (*Michigan Carpenters* involved liquidated damages for an audit and late payments provided for by a CBA.) Trustees says it is entitled to liquidated damages for late payments under the terms of the CBA.

FE asserts that liquidated damages provided for by the terms of the CBA between the parties operate as a penalty. According to FE, the liquidated damages act as a penalty because they apply to the same time period as the recovery of double interest under §1132(g)(2). It follows that FE would have no objection if the double interest provision of §1132(g)(2) did not apply. In any event, FE makes no effort to explain, beyond the conclusory statement above, why the damages it bargained for in the CBA are now inappropriate for the Court to award.

*Michigan Carpenters* instructs that parties are free to contract for liquidated damages in the absence of the mandates of §1132(g)(2) so long as they do not operate as a penalty. 933 F.2d at 390.

---

[12] Trustees contend that even in the absence of §1132(g)(2) its trust and collection policies dictate that FE owes 12% interest. Trustees provides copies of these documents but does not provide any indication that FE ever agreed to be bound by their terms. Absent evidence that FE is contractually bound to this policy, Trustees' internal documents do not obligate FE to comply with their terms.

To be enforceable: "the district court must determine that the [liquidated damages] provisions meet two conditions of enforceability. First, the harm caused by a breach must be very difficult or impossible to estimate. And second, the amount fixed must be a reasonable forecast of just compensation for the harm caused." *Bricklayers Pension Trust Fund v. Rosati, Inc.*, 187 F.3d 634 (6th Cir. 1999). The Sixth Circuit explains, "that [a] penalty is designed to coerce performance by punishing default." *Vanderbilt University v. DiNardo*, 174 F.3d 751(6th Cir. 1999). The Sixth Circuit cautions: where…trust funds are denied recovery of liquidated damages under section 1132(g)(2) and seek instead to recover such damages as provided in the parties' trust documents or collective bargaining agreement, these contractual provisions must be carefully scrutinized to determine whether they are void as a penalty." *Id.*

First, FE makes no attempt in its papers to explain why the liquidated damages for late payments meet the criteria listed above. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989 (6th Cir. 1997) (citations and internal quotation marks omitted.) Second, the CBA stipulates that damages from late payments are "difficult to calculate with any certainty." Finally, damages based on late payments are proportional in the sense that they are assessed as a percentage of the late payments at a rate bargained for by the parties. Trustees asks for approximately $36,000 on delinquent contributions totaling

9

approximately $115,000, some of which came due over five years ago. Considering ERISA's purpose of ensuring prompt payment of fringe benefits, the late payment assessment in proportion to the delinquent contributions is not a penalty.

The Court issued a judgment on January 3, 2012 for $162,424.51. (Doc. 38). Fed. R. Civ. P. 60(a) allows the Court to amend a judgment on its own motion in the event of a mistake, oversight, or omission. Trustees previously asserted it was entitled to liquidated damages from the audit, that assertion was an error. Accordingly, the Clerk will enter an amended judgment adding attorney's fees in the amount of $22,679.50 and subtracting liquidated damages for the cost of the audit in the amount of $11,448.81, for a total amended judgment of $173,655.20.

**SO ORDERED.**

Dated: February 22, 2012   s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, Wednesday, February 22, 2012, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5160

---

[i] Amended to correct the liquidated damages amount for the cost of the audit and the total amended judgment amount.